UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ELIDA RODRIGUEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **MICHAEL J. ASTRUE, Commissioner** | § | **SA-09-CV-0544 OG (NN)** |
| **of the Social Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:   **Honorable Orlando Garcia**
      **United States District Judge**

### Introduction

Plaintiff Elida Rodriguez brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Rodriguez is not disabled for the purposes of the Social Security Act (the Act) and denying Rodriguez's applications for Disability Income Benefits and Supplemental Security Insurance. Rodriguez asked the district court to reverse the Commissioner's decision and to render judgment in her favor.[1]

After considering Rodriguez's brief in support of her complaint,[2] the brief in support of the Commissioner's decision,[3] the record of the SSA proceedings, the pleadings on file, the

---

[1] Docket entry # 4.

[2] Docket entry # 16.

[3] Docket entry # 18.

applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[4]

## Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## Administrative Proceedings

Based on the record in this case, Rodriguez exhausted her administrative remedies prior to filing this action in federal court. Rodriguez applied for disability benefits on March 27, 2007, alleging disability beginning on June 24, 2006.[5] Rodriguez associated no event with her alleged on-set date. The application date coincides with Rodriguez's separation from her husband. The Commissioner denied the applications initially and on reconsideration.[6][7] Rodriguez then asked for a hearing before an ALJ.[8] An ALJ held a hearing on October 21, 2008.[9] The ALJ issued a

---

[4]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[5]SSA record, pp. 121 & 125.

[6]*Id*. at pp. 70-73.

[7]*Id*. at pp. 21-24, 34 & 38.

[8]*Id*. at p. 92.

[9]*Id*. at p. 29.

decision on December 1, 2008, concluding that Rodriguez is not disabled within the meaning of

the Act.[10]  Rodriguez asked the Appeals Council to review the decision.[11]  On May 7, 2009, the

Appeals Council declined to review the decision, determining no reason existed for a review.[12]

The ALJ's decision became the final decision of the Commissioner for the purpose of the district

court's review pursuant to 42 U.S.C. § 405(g).  After receiving permission to proceed in forma

pauperis, Rodriguez filed this action on July 6, 2009 seeking review of the Commissioner's

decision.[13]

## Issue Presented

Is the ALJ's decision that Rodriguez is not under a "disability," as
defined by the Act, supported by substantial evidence and does the
decision comport with relevant legal standards?

## Analysis

### A. Standard of Review

In reviewing the Commissioner's decision denying disability benefits, the reviewing court

is limited to determining whether substantial evidence supports the decision and whether the

Commissioner applied the proper legal standards in evaluating the evidence.[14]  "Substantial

evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a

---

[10]*Id*. at p. 9.

[11]*Id*. at p. 7.

[12]*Id*. at p. 1.

[13]Docket entry # 4.

[14]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

reasonable mind might accept as adequate to support a conclusion."[15]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[16]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[17]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[18]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[19]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[20]

### 1. Entitlement to Benefits

---

[15] *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[16] *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[17] *Martinez*, 64 F.3d at 173.

[18] *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[19] *Martinez*, 64 F.3d at 174.

[20] *Id.*

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[21]  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[22]  A claimant shall be determined to be disabled only if her physical or mental impairment or impairments are so severe that she is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she applied for work.[23]

### 2. Evaluation Process and Burden of Proof

The Commissioner's regulations provide that disability claims are to be evaluated according to a five-step process.[24]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[25]

The first step involves determining whether the claimant is currently engaged in

---

[21]42 U.S.C. § 1382(a)(1) & (2).

[22]42 U.S.C. § 1382c(a)(3)(A).

[23]42 U.S.C. § 1382c(a)(3)(B).

[24]20 C.F.R. §§ 404.1520 and 416.920.

[25]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

substantial gainful activity.[26]  If so, the claimant will be found not disabled regardless of her

medical condition or her age, education, or work experience.[27]  The second step involves

determining whether the claimant's impairment is severe.[28]  If it is not severe, the claimant is

deemed not disabled.[29]  In the third step, the Commissioner compares the severe impairment with

those on a list of specific impairments.[30]  If it meets or equals a listed impairment, the claimant is

deemed disabled without considering her age, education, or work experience.[31]  If the impairment

is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional

capacity (RFC) and the demands of her past work.[32]  If the claimant is still able to do her past

work, the claimant is not disabled.[33]  If the claimant cannot perform her past work, the

Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her

residual capacities, age, education, and work experience, to do other work.[34]  If the claimant

cannot do other work, she will be found disabled.  The claimant bears the burden of proof at the

---

[26]20 C.F.R. §§ 404.1520 and 416.920.

[27]*Id.*

[28]*Id.*

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Id.*

[34]*Id.*

first four steps of the sequential analysis.[35]  Once the claimant has shown that she is unable to

perform her previous work, the burden shifts to the Commissioner to show that there is other

substantial gainful employment available that the claimant is not only physically able to perform,

but also, taking into account her exertional and nonexertional limitations, able to maintain for a

significant period of time.[36]  If the Commissioner adequately points to potential alternative

employment, the burden shifts back to the claimant to prove that she is unable to perform the

alternative work.[37]

**B. Findings and Conclusions of the ALJ**

        In this case, the ALJ reached his decision at step four of the decision-making process.  At

step one, the ALJ determined that Rodriguez had not engaged in substantial gainful activity since

her alleged on-set date.[38]  At step two, the ALJ determined that Rodriguez has the following

severe impairments: hypertension, arthritis with chronic shoulder pain and chest pain.[39]  The

record contains no diagnosis or treatment of arthritis.  At step three, the ALJ determined that

Rodriguez's impairments do not meet or medically equal a listed impairment.  At step four, the

ALJ determined that Rodriguez can perform light work, except she can only occasionally bend,

stoop, crouch, kneel or crawl.[40]  The ALJ determined that Rodriguez can perform her past

---

[35]*Leggett*, 67 F.3d at 564.

[36]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[37]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[38]SSA record, p. 17.

[39]*Id*.

[40]*Id*. at p. 19.

relevant work as a poultry worker.  Because the ALJ determined Rodriguez can perform her past relevant work, the ALJ concluded that Rodriguez is not disabled under the Act.

## C.  Rodriguez's Allegation of Error

The ALJ determined that Rodriguez "has the residual functional capacity to perform light work . . . except that she is limited to occasional bending, stooping, crouching, kneeling, and crawling.[41]  Based on this RFC, the ALJ determined that Rodriguez "is able to perform her past relevant work as a poultry worker, as generally performed and as the claimant actually performed that work."[42]  That determination considered Rodriguez's ten-year employment at the Tyson chicken processing plant in Seguin.  Rodriguez challenges this step-four determination, arguing that such capacity is inconsistent with the physical findings of both treating and examining doctors.  She maintains depression limits her ability to perform work-related activities and prevents her from performing work-related physical and mental activities on a regular and continuing basis.

The Commissioner's regulations define light work as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.[43]

The Commissioner's procedures provide that "statements by the claimant regarding past work are

---

[41]*Id*. at p. 19.

[42]*Id*. at p. 27.

[43]20 C.F.R. §§ 404.1567(b), 416.967(b).

generally sufficient for determining the skill level, exertional demands and nonexertional demands of [the claimant's past relevant] work."[44]  In determining a claimant's ability to do past relevant work, the ALJ must carefully consider: "(1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for . . . her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources . . . on the requirements of the work as generally performed in the economy."[45]

    Rodriguez's statements about her work at the Tyson plant.  When Rodriguez applied for disability benefits, she stated that she worked in two capacities at the Tyson plant: putting chickens in tubs and hanging chickens on the shackle.[46]  Rodriguez stated that this work required frequent lifting of less than 10 pounds and that the heaviest she lifted was less than 10 pounds.[47] She later told an agency representative that she frequently lifted less than 10 pounds and that the heaviest she lifted was 50 pounds.[48]  The ALJ found the latter statement—that the heaviest she lifted was 50 pounds—incredible because Rodriguez indicated she lifted less than 10 pounds

---

[44]SSR 82-62: Titles II & XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in General, effective Aug. 20, 1980.

[45]*Id.*

[46]SSA record, p. 146.

[47]*Id.*

[48]*Id.* at p. 168.

when she applied for benefits.[49]  The ALJ devoted six pages of the unfavorable decision explaining why Rodriguez is not credible.  Rodriguez suggests in her brief that she lifted 40-pound boxes of chicken wings for her job with Tyson, but that is not what she testified.  She testified that she worked on an assembly line, cutting chicken wings and packing the wings in 40-pound boxes.[50]  She did not testify that she lifted the 40-pound boxes.

Rodriguez's statements about why she no longer works.  In an interview with an agency representative, Rodriguez stated that she stopped her job as a laundry aide at a nursing home because her legs got weak and her feet hurt when she pushed laundry carts to deliver clothing.[51] The record contains no explanation about why Rodriguez no longer works at the Tyson plant.

Medical evidence about how Rodriguez's impairments limit her ability to perform her past work as a poultry worker.  The medical treatment records consist of the following: (1) an emergency visit in early August 2005 for chest pain—Rodriguez underwent a series of tests and was released two days later with instructions for a followup visit;[52] (2) a followup visit in late August 2005—the cardiologist found Rodriguez's cardiovascular health as stable and recommended a sleep study;[53] (3) a sleep study in mid-September 2005—the study detected

---

[49]See id. at p. 27 (finding exh. 2E2 credible and stating that Rodriguez is not credible); p. 146 (indicating at the time of application that the heaviest weight she lifted as a poultry worker was "less than 10 lbs.").

[50]Id. at pp. 37-38.

[51]Id. at p. 167.

[52]Id. at p. 215.  The record of this treatment begins on p. 215, and is duplicated in more than one place in the record.

[53]Id.  at p. 408.

severe obstructive sleep apnea syndrome;[54] (4) an overnight stay in the hospital in mid-December 2007 for complaints of back and chest pain—Rodriguez was discharged to continue medication for hypertension;[55] and (5) an examination in mid-September 2008 by a cardiologist—Rodriguez's electrocardiogram was normal and control of hypertension was questionable.[56]

The record also contains a report of a state internal medicine examination.  Rodriguez presented complaining about hypertension, arthritis, heart problems, hormonal changes and joint pain in her shoulders, hands, feet and knees, but the state agency doctor observed that Rodriguez had no documented history of coronary disease, Rodriguez's heart rate and rhythm was regular, Rodriguez had was no lumbar tenderness, Rodriguez's knees were stiff with range of motion, and Rodriguez showed decreased range of motion in shoulders.[57]  In addition, a state consultant opined that Rodriguez can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, can stand and/or walk about 6 hours in an 8-hour workday, can never balance, can occasionally climb, stoop, kneel, crouch, or crawl.[58]  This evidence is consistent with the ability to perform work light work.

Other than these sparse records about Rodriguez's physical impairment, the record includes mental health treatment notes, documenting visits with mental health professionals beginning in mid-December 2006 and ending mid-June 2008.  The most notable aspect of the

--------

[54]*Id*. at p. 199.

[55]*Id*. at p. 435.

[56]*Id*. at p. 523.

[57]*Id*. at pp. 333-34.

[58]*Id*. at pp. 394-400.

mental health treatment records is the ratings of severity of Rodriguez's depression.  Mental health professionals consistently rated Rodriguez's depression as "one"[59] on a scale in which "zero" represents "no symptoms" and "ten" represents "extreme symptoms."  Only twice did a clinician rate Rodriguez's depression higher.  In March 2008, a doctor rated Rodriguez's depression as "two."[60]  The record also includes a state consultant's mental residual functional capacity assessment, opining that Rodriguez can understand, remember, and carry out detailed but not complex instructions, make decisions and concentrate for extended periods, accept instructions and respond appropriately to changes in routine work settings.[61]  This evidence does not reflect significant impairment.

     Supplementary information about the requirements of the work as generally performed in the economy.  The Dictionary of Occupational Titles (DOT) provides uniform occupational language for use by local job services.  The Commissioner's procedures permit the ALJ to rely on a job listed in the DOT to define the job "as it is *usually* performed in the national economy."[62]  The DOT cautions, however, that its occupational information "may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities."[63]  The Commissioner's regulations likewise caution that "some individual jobs may

---

[59]*Id*. at pp. 488, 490, 501 & 504.

[60]*Id*. at pp. 494-97.

[61]*Id*. at p. 403.

[62]SSR 82-61: Titles II & XVI: Past Relevant Work–the Particular Job or the Occupation as Generally Performed, effective Aug. 20, 1980.

[63]Dictionary of Occupational Titles (4th ed. revised 1991), special note.

require somewhat more or less exertion than the DOT description."[64]

As to Rodriguez's past job as poultry worker, the DOT's closest listed occupation is a "poultry hanger." The DOT describes the work of a "poultry hanger" as: "[s]hackles and suspends live or slaughtered poultry from conveyor for killing, scalding, removal of feathers or cleaning. Removes live poultry from shipping crates, or picks up slaughtered birds from platforms and chilling vats and hangs them by feet, neck, or wings on shackles of conveyor."[65] This description is consistent with Rodriguez's statement that she hung chickens on a shackle. The DOT describes a "poultry hanger" as requiring a "medium strength" rating. A medium strength rating requires "[e]xerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects." This requirement appears to be inconsistent with the ALJ's determination that Rodriguez can perform light work, but Rodriguez described work requiring less lifting ability. Hanging chickens on the shackle requires a worker to lift less than 10 pounds because chickens weigh less than 10 pounds. The vocational expert recognized that the DOT indicated that the job was usually performed in the "medium" range of physical exertion, but testified that Rodriguez described work in the "light" range of exertion.[66]

Considered together, the evidence supports the ALJ's determination that Rodriguez can perform light work, including her past relevant work as a poultry worker or poultry hanger. No

---

[64]SSR 82-61: Titles II & XVI: Past Relevant Work–The Particular Job or the Occupation as Generally Performed, effective Aug. 20, 1980.

[65]Dictionary of Occupational Titles (4th ed. revised 1991), § 525.687-078.

[66]SSA record, pp. 63-64.

13

treatment record or report of medical examination indicates Rodriguez lacks the ability to lift 20 pounds or frequently lift or carry objects weighing up to 10 pounds.  No treatment record or report of medical examination indicates Rodriguez is limited in walking or standing.  The only evidence indicating Rodriguez cannot perform light work is Rodriguez's statements about her impairments.  The ALJ discussed at length why those statements are not credible.  Rodriguez's mental health records do not show that depression limits her ability to perform work-related activities on a regular and continuing basis.

**Recommendation**.  As the party with the burden, Rodriguez was required to show that her impairments significantly limit her physical or mental ability to do basic work activities.  She did not carry that burden. The ALJ applied the proper legal standards in reaching his step-four determination.  Substantial evidence supports the determination.  For these reasons, I recommend affirming the Commissioner's decision.

**Instructions for Service and Notice of Right to Object/Appeal**.  The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[67] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for

_____

[67]28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

such objections; the district court need not consider frivolous, conclusive or general objections.

A party's failure to file written objections to the proposed findings, conclusions and

recommendations contained in this report shall bar the party from a *de novo* determination by the

district court.[68]   Additionally, failure to file timely written objections to the proposed findings,

conclusions and recommendations contained in this report and recommendation shall bar the

aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court.[69]

     **SIGNED** on August 11, 2010.


*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[68]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[69]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).